IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|                            |   |                       |
|----------------------------|---|-----------------------|
|                            | ) |                       |
|                            | ) |                       |
| UNITED STATES OF AMERICA   | ) |                       |
|                            | ) |                       |
| vs.                        | ) | Criminal No. 06-193   |
|                            | ) |                       |
| SEAN REED,                 | ) |                       |
|                            | ) |                       |
| Defendant.                 | ) |                       |

ORDER

AND NOW, this 14th day of April 2022, the Court has considered Defendant Sean

Reed's Motion for Reconsideration ("Reconsideration Motion") of the Order at Doc. No. 153

(**Doc. No. 158**), as well as the Motion to Appoint Counsel (**Doc. No. 159**) and Motion to

Supplement/Hold in Abeyance (**Doc. No. 162**).  Upon consideration of his motions, the

Government's response (Doc. No. 160), and Defendant's supplemental filing (Doc. No. 163),

IT IS HEREBY ORDERED that Defendant's motions are DENIED.[1]

## I.      Background

In his Reconsideration Motion (Doc. No. 158), Defendant asks the Court to reconsider its

Order at Doc. No. 153 (March 10, 2021) denying his motion for a reduced sentence pursuant to

18 U.S.C. § 3582(c)(1)(A) (Doc. No. 147) ("RIS Motion").  In the Motion to Appoint Counsel

(Doc. No. 159), Defendant requests a court-appointed attorney to assist him in presenting his

argument(s) to the Court.  Finally, Defendant asks that this Court delay its deliberation of his

Reconsideration Motion until the United States Supreme Court decides *Concepcion v. United*

---

[1]      Because the Court specifically afforded Defendant the opportunity to supplement his
Reconsideration Motion, it was not necessary for Defendant to move to supplement the record
before submitting the evidence that appears at Doc. No. 163.  The Court has considered the
evidence at Doc. No. 163, and hereafter only refers to Defendant's Motion to Supplement/Hold
in Abeyance at Doc. No. 162 as it pertains to the request for an abeyance.

*States*, No. 20-1650.  (Doc. No. 162).  As explained herein, the Court will not hold this matter in abeyance pending the outcome in *Concepcion*, nor will the Court appoint counsel to represent Defendant.  Further, the Court, having considered Defendant's Reconsideration Motion and the evidence he filed at Doc. No. 163, will find that reconsideration of its order at Doc. No. 153 is unwarranted.  Because the Court writes primarily for the benefit of the parties who are familiar with the background of this case, it will reference relevant facts as necessary instead of summarizing the salient facts here.

## II.    Request for Abeyance

The Court here denies Defendant's request to place this case in abeyance while the Supreme Court decides *Concepcion*, No. 20-1650.  In *Concepcion*, the question being presented to the Supreme Court pertains to 18 U.S.C. § 3582(c)(1)(B), not Section 3582(c)(1)(A).  *See United States v. Concepcion*, 991 F.3d 279, 285 (1st Cir.), *cert. granted*, 142 S. Ct. 54 (2021). The defendant in that case sought to reduce the sentence that was imposed upon him for possession with intent to distribute and distribution of crack cocaine.  *Concepcion*, 991 F.3d at 283.  The Fair Sentencing Act (2010) addressed "disparities between . . . drug-trafficking offenses involving crack cocaine . . . and powdered cocaine," but it did not benefit "offenders . . . sentenced before August 3, 2010."  *Id.*  The First Step Act (2018) changed that, making "specified portions of the Fair Sentencing Act retroactively" applicable to defendants who had previously been left out.  *Id.* at 284.  The question that arose in *Concepcion*—and that divided the federal courts of appeal—is whether resentencing made available by Section 404 of the First Step Act would be plenary.  *Id.* at 285 (citing cases).  The Supreme Court's resolution of the issue will not affect the outcome of Defendant's case wherein he seeks reconsideration of the Court's decision denying his motion for reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

2

Accordingly, holding this matter in abeyance pending the outcome of *Concepcion* would not serve the interests of justice.

**III.    Appointment of Counsel**

The Court has discretion to appoint counsel to represent Defendant.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.").  *See also United States v. Freed*, 2020 WL 5604057, at *1 (W.D. Pa. Sept. 18, 2020), *aff'd*, 845 Fed. Appx. 198 (3d Cir. 2021) (citation omitted).  As long as the *pro se* litigant seeking appointed counsel has more than a meritless claim, the Court will assess his request for assistance using "a variety of factors," such as "the movant's ability to present his case considering his education, literacy, experience, and the restraints placed upon him by incarceration," "the complexity of the legal issues," and "the degree to which factual investigation is required and his ability to pursue such investigation."  *Freed*, 2020 WL 5604057, at *1—2 (citing *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993)) (reciting the "*Tabron* factors").

The Court's consideration of the *Tabron* factors in this instance counsels against granting Defendant's request.  Defendant's ability to present his own case is particularly salient—he ably pursued his underlying RIS motion without the assistance of counsel and his Reconsideration Motion is well organized and clearly expressed.  Though Defendant purported to include but failed to file his medical records with the Reconsideration Motion, he timely produced those records in response to the Court's order giving him additional time to do so.  He has thus demonstrated that he can capably represent himself in this matter before the Court.  Not only that, but this legal matter is not particularly complex, nor does it demand significant factual investigation.  For these reasons, the Court will deny Defendant's motion for appointed counsel.

It will, of course, afford him the benefit of liberal construction given to *pro se* litigants. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## IV.     Reconsideration Motion

A motion for reconsideration will only be granted where the movant shows: "(1) an intervening change in the controlling law, (2) the availability of new evidence that was not available at the time of the prior decision, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States v. Thomas*, 2021 WL 461890, at *1 (W.D. Pa. Feb. 9, 2021) (citing *Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).[2] Such motions are "not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *United States v. Murrietta*, 2021 WL 322181, at *2 (W.D. Pa. Feb. 1, 2021) (citing *Donegan v. Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012)). Nor are motions for reconsideration an opportunity for an unsuccessful litigant "to change theories of the case and advance new . . . contradictory, evidence in support." *United States v. Bonfilio*, 2017 WL 118404, at *2 (W.D. Pa. Jan. 12, 2017) (citations omitted). And while the Court has "inherent authority to decide motions for reconsideration and rehearing of orders in criminal proceedings," *United States v. Matthews*, 2010 WL 4388067, at *2 n.5 (W.D. Pa. Oct. 29, 2010), the Court's

---

[2]     The Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration, however, "the Third Circuit has recognized that such motions 'may be filed in criminal cases,' and has referenced the Federal Rules of *Civil* Procedure governing reconsideration in the criminal context." *United States v. Gates*, 2020 WL 3407132, at *1 (E.D. Pa. Apr. 21, 2020) (*United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003)). Rule 59(e) for motions to alter/amend judgments calls for such motions to be filed "no later than 28 days after the entry of the judgment." Defendant's Reconsideration Motion was filed more than nine months after the Court entered its order denying the underlying RIS motion. The Court, however, will set aside the issue of timeliness and address the substance of Defendant's Reconsideration Motion.

authority to modify an imposed sentence is very limited. *Id.*; 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819 (2010).

Defendant asks the Court to reconsider its denial of his RIS motion wherein he argued that extraordinary and compelling reasons warranted a reduction of his sentence, *i.e.*, compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The extraordinary and compelling reasons Defendant proposed in that motion included the impact of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) on his statute of conviction, the excessive severity of his sentence, his rehabilitation, and health risks associated with COVID-19. (Doc. No. 147). The Court decided that Defendant's proposed reasons were not extraordinary and compelling because, *inter alia*, the more appropriate vehicle for Defendant to raise his *Rehaif* challenge would have been 28 U.S.C. § 2255 had he not already exhausted his opportunities to present such challenges to the Court. *United States v. Reed*, 2021 WL 914203, at *4 (W.D. Pa. Mar. 10, 2021). Presenting such a challenge as a proposed "extraordinary and compelling" reason for compassionate release concerningly seemed to be a circumvention of limits on successive Section 2255 petitions. *Id.* Not only that, but *Rehaif*'s impact lacked the "extraordinary" quality necessary to justify compassionate release. *Id.* at *5 (explaining that thousands of prisoners were likely in the same position as Defendant, "serving sentences based on convictions that may not have been sustained had *Rehaif* applied at the time").

Defendant's other alleged extraordinary and compelling reasons similarly lacked uniqueness. Though he argued his sentence was excessive, the Court found it was not "off the charts." *Id.* Wanting to avoid sentencing disparities, the Court declined to go lower than what the Sentencing Guidelines recommended. *Id.* Defendant's personal risk of serious illness due to COVID-19 was not extraordinary and compelling where he presented no evidence of medical

conditions that would put him at greater risk than any other prisoner. *Id.* His rehabilitative

efforts, without more, could not justify early release. *Id.* at *6 (citing 28 U.S.C. § 994(t)).

Further, this Court decided that even if Defendant had demonstrated extraordinary and

compelling reasons for a sentence reduction, the applicable Section 3553(a) factors—particularly

the need to avoid sentencing disparities—would have made "a reduction of his term of

imprisonment inadvisable." *Id.*

In the Reconsideration Motion, Defendant does not argue that there has been a change in

controlling law[3] nor that the Court clearly erred as a matter of law or fact. While he does reargue

much of what appeared in his original RIS motion,[4] a liberal reading of the Reconsideration

Motion reveals the possibility of reconsideration due to newly available evidence. Defendant

---

[3]     Defendant does note an important legal development, that is, the Third Circuit decided in *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021) that the Sentencing Commission's statement defining extraordinary and compelling reasons (U.S.S.G. § 1B1.13 cmt. n.1) was no longer binding on "courts considering prisoner-initiated motions." *Id.* This Court anticipated the Third Circuit's ruling in that regard, *Reed*, 2021 WL 914203, at *3, therefore, the legal development is not a change affecting the Court's underlying order.

[4]     For example, in the RIS motion, Defendant argued that his character had evolved over fifteen years of incarceration. (Doc. No. 147, pgs. 11—12). In the Reconsideration Motion he similarly argues that people have the capacity for change and that the Court should consider his post-sentencing conduct and rehabilitation. (Doc. No. 158, pg. 4). As in his RIS motion (Doc. No. 147, pg. 3), he raises risks associated with the spread of COVID-19 at FCI-Talladega. (Doc. No. 158, pg. 4—5). Defendant has argued that his sentence was excessively severe in both motions (Doc. No. 147, pg. 12; Doc. No. 158, pg. 6). And, as in his RIS Motion, Defendant here argues that he would present no danger to the community upon release. (Doc. No. 147, pgs. 11—12; Doc. No. 158, pg. 16). Defendant analogizes his case to cases wherein the courts have granted compassionate release motions for defendants whose criminal histories appear to be more severe than his own. (Doc. No. 158, pg. 16). He acknowledges that, since this Court denied his RIS motion, he was sanctioned for "possession of a hazardous tool" (cell phone). (Doc. No. 158, pg. 18). However, he emphasizes his work and readiness for re-entry into the community. (*Id.*). He also argues his case is like the case for a reduced sentence presented by the defendant in *United States v. Northcutt*, 2021 WL 615207 (W.D. Pa. Feb. 17, 2021) wherein this Court granted compassionate release. (Doc. No. 158, pgs. 20—21). Because reconsideration is not an opportunity to relitigate, *Murrietta*, 2021 WL 322181, at *2, this Court only addresses Defendant's repeat arguments insofar as they pertain to newly available evidence.

now argues that he suffers from "current medical conditions" that increase his "risk for the contraction of COVID-19." (Doc. No. 158, pg. 6). He alleges that he is "obese, a smoker, and has high blood pressure," and that he is an "African American male, age 45 which places him in a high category to recontract COVID-19 and possibly die." (*Id.*). He also alleges that he "currently suffers from the long[-]term effects of COVID-19, which is known as **'COVID Long Haulers.'**" (*Id.*). His alleged symptoms include "shortness of [breath], fatigue, headaches, dizziness, loss of taste and smell, blackouts, and heat flashes." (*Id.*, pgs. 6, 14 (adding brain fog and elevated heart rate)). He argues these medical conditions "mak[e] his prison sentence more laborious [than] those of similarly situated defendants." (*Id.*, pg. 6).

As in the underlying motion, he expresses concern that the Bureau of Prisons ("BOP") does not adhere to its own COVID-19 protocols. (*Id.*, pg. 9). To that end, he cites significant BOP failures at other facilities like FCI Butner. (*Id.*). He also argues that his vaccination should not prevent a reduction of sentence where the duration of vaccine-immunity and its effectiveness against new variants is yet unknown. (*Id.*, pg. 15). To substantiate his allegations, Defendant has submitted medical records including: his BOP Health Services "Vitals All" record from 10/01/2018—10/01/2019; a September 23, 2021 record that appears to show, among other things, his current height, weight, and Body Mass Index ("BMI"); his BOP Health Services "COVID-19 RNA" record from 01/28/2021—01/28/2022; and his BOP Health Services "Immunizations" record from 01/28/2021—01/28/2022. (Doc. No. 163).[5]

---

[5] Defendant had indicated that medical records proving his COVID-19 risk were included with his Reconsideration Motion, however, the purported exhibit for such evidence included only a cover sheet. Accordingly, the Court gave Defendant additional time to "file the medical records purported to be included but not enclosed" with the motion. (Doc. No. 161). Defendant timely responded by February 23, 2022. (Doc. No. 162, 163).

Only some of the evidence Defendant now presents to the Court is "new," that is, it was "not previously available." *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. 1992). And, more importantly, none of the evidence now available to the Court undermines its denial of Defendant's RIS motion. The evidence does not bear out Defendant's allegations of obesity, high blood pressure, or symptoms associated with being a COVID-19 long-hauler. His 2019 vital records show only one high blood pressure reading followed by three normal readings. (Doc. No. 163, pg. 2). The height/weight/BMI record shows a BMI of 28.5, which is not in range for obesity. (Doc. No. 163, pg. 3).[6] Defendant's vaccination record (Doc. No. 163, pg. 5) does not work against him, but neither does it support his argument that his risk from COVID-19 is unique. One record from January 2022 corroborates Defendant's complaint of headaches (Doc. No. 163, pg. 4), but reveals little else other than a negative result for COVID-19 RNA. (*Id.*).

This evidence fails to demonstrate that Defendant's COVID-19 risk puts him in an extraordinary position relative to the risk tolerated by other prisoners. Not only do these records fail to substantiate Defendant's alleged enhanced risk factors, but there are presently no confirmed active COVID-19 cases at FCI-Talladega.[7] Thus, the most recently available evidence is indicative of only a speculative risk that COVID-19 might spread to his facility, a risk the Third Circuit has deemed insufficient to justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the

---

[6]     *Defining Adult Overweight & Obesity*, Centers for Disease Control and Prevention (June 7, 2021), available at https://www.cdc.gov/obesity/adult/defining.html.

[7]     *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated April 13, 2022).

possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"). Accordingly, the Court is not persuaded to reconsider its decision denying Defendant's underlying motion.[8]

### V.   Conclusion

Because Defendant has demonstrated no change in controlling law, clear error of law/fact or necessity of preventing manifest injustice, or newly available evidence that would affect the Court's denial of Defendant's RIS motion, the Court will deny Defendant's Reconsideration Motion (Doc. No. 158).  The Court will also deny Defendant's motion for appointment of counsel (Doc. No. 159) and motion to hold in abeyance (Doc. No. 162) as specified above.

s/ Alan N. Bloch<br>United States District Judge

cc:    Sean Reed, Reg. No. 09576-068
       F.C.I. Talladega
       P.M.B. 1000
       Talladega, AL 35160

---

[8]      To the extent the Court could construe Defendant's Reconsideration Motion as a second motion for compassionate release, the outcome would be the same.  Defendant appears to have filed another request for compassionate release with the Acting Warden at his facility on September 27, 2021, which was denied on November 10, 2021.  (Doc. No. 158-1).  Thus, construed as a motion for compassionate release, Defendant would have satisfied the 30-day lapse provision at 18 U.S.C. § 3582(c)(1)(A).  However, assessing Defendant's proposed extraordinary and compelling reasons for a reduced sentence, the Court would have found the risk of exposure to COVID-19 and serious illness arising therefrom to be too speculative to justify a reduction of his sentence.  The Court would have also found Defendant's remaining reasons, *e.g.*, his rehabilitation, similarly failed to warrant a reduction of his sentence.  Not only that, but the Court would stand by its initial determination that consideration of the Section 3553(a) factors counsels against early release.  *Reed*, 2021 WL 914203, at *6.